**NORTHWESTERN NAT. LIFE INS. CO. v. GRIFFITH et al.**

No. 1576.

Court of Civil Appeals of Texas. Eastland.

Sept. 18, 1936.

Renfro & McCombs, of Dallas, for appellant.

C. L. Hailey, of Abilene, and F. A. Arnold, of Anson, for appellees.

LESLIE, Chief Justice.

This is a suit in trespass to try title instituted by the Northwestern National Life Insurance Company, appellant, against W. B. Griffith and others to recover the east one-half of the northeast one-quarter of Orphan Asylum Survey No. 6 in Jones county, Tex. From a judgment in favor of the defendants, the insurance company appeals.

On May 17, 1932, the appellant took judgment against the appellees W. B. Griffith and wife for debt, with foreclosure of its lien on the south one-half of the northeast one-quarter of section 46, D & D A Lands, Jones county, Tex. This property was sold under order of sale and the judgment credited with the amount obtained thereunder. An alias execution based on the unpaid balance of the judgment issued to Jones county and was levied upon the land first above described. The land was advertised and sold for $500 on October 4, 1932, to the company. The sheriff executed a deed to the purchaser.

Subsequently the insurance company filed this suit against the defendants W. B. Griffith, his present wife, and the children of his first wife (now deceased) to recover said property and remove the cloud from the title, etc. Griffith and wife answered by plea of not guilty, and that the land was their homestead and not subject to sale under execution. The other defendants pleaded likewise, entered a general denial, and supported the plea of Griffith and wife.

The trial was before the court without a jury, and at the conclusion of the same a judgment was rendered that the plaintiff take nothing by the suit. The appellant seeks to reverse and reform the judgment of the trial court to the extent that it be permitted to recover from the defendant his one-half undivided community interest in the lands first described.

The appellant's contention is that the property in controversy was not the homestead of W. B. Griffith and family when levied on and sold under the alias execution, and that in any event the insurance company acquired by the sheriff's sale Griffith's one-half interest in the property.

The defendant W. B. Griffith and his first wife, while residing on this land, acquired the same by purchase from his brother on September 6, 1905. At that date W. B. Griffith's family consisted of his said wife and four minor children. Thereafter, the children arriving at school age, and such advantages being inadequate in the community in which they resided, said Griffith and family moved from said land in 1908 to the town of Avoca, where they occupied a house given his wife by her father. This wife died in 1914 and in two or three years thereafter he married his present wife. After the death of the first wife, Griffith and family resided at different places and in different counties. He has been practically all the time a rural mail carrier, and his residence has been in some measure determined by his employment. He has not in person resided on the land in controversy since removing from it for the above purposes, but some of his children by his permission have occupied the same at all times during his absence. Since moving out of his first wife's house at Avoca soon after her death, W. B. Griffith and his family have been residing most of the time in rented premises. The property involved is the only land ever owned by Griffith. He testified:

"That's the only home I ever did own or had any interest in." It would serve no useful purpose to set out extensively W. B. Griffith's testimony bearing upon the homestead issue, and the alleged abandonment of same. Suffice it to say that he testified at length and to the effect that on moving from said land with his wife and children he had no intention whatever to abandon the use of the same for homestead purposes. His testimony with reference to said purpose is quite to the contrary, and several neighbors and relatives testified to acts and statements on the part of Griffith that corroborates his contention of the continuous homestead nature of the land. His claims are not clouded by contradictory designations of other lands as homestead, etc.

██ In the light of the testimony the land in controversy was undoubtedly homestead of Griffith and his wife when they removed therefrom to Avoca for school purposes. From the testimony before us it does not appear as a matter of law that Griffith ever abandoned said land as a homestead. The least that can be said of the testimony on the trial is that his alleged abandonment became a disputed issue of fact. The trial court heard the testimony and resolved the issue against the plaintiff. The evidence being sufficient to support the finding, this court is without authority to disturb the judgment. The court's findings of Griffith's definite and permanent intention not to abandon the property as a homestead is conclusive on that question, which is the controlling one in this case.

██ In studying this record and reaching these conclusions we are again made aware of the difficulties involved in correctly determining the question of abandonment in a case where the homestead claim is asserted, but the rules of law pertaining thereto have become definitely established. To effect the legal abandonment of a homestead there must be an intent on the part of the head of the family to permanently abandon and cease to use the property for homestead purposes and such intent must be actually executed by abandonment of the property for such purposes in accordance with the intent. As said in Nunn on Exemptions, § 4, p. 159, 160: "The intent here contemplated is a present, definite and permanent intent to cease to use the property for homestead purposes, as distinguished

712

from an indefinite, uncertain or conditional intent to so abandon the use of the property for such purpose." For other authorities see Blanks v. First National Bank of Seymour (Tex.Civ.App.) 44 S. W.(2d) 393 (writ ref.); Life Ins. Co. of Virginia v. Weatherford (Tex.Civ.App.) 60 S.W.(2d) 883 (writ ref.); First Nat. Bank in Stamford v. Jones (Tex.Civ.App.) 59 S.W.(2d) 1103; Foreman v. Meroney, 62 Tex. 723; 22 Tex.Jur. p. 359, § 249.

An application of the rules of law announced in these authorities to the facts of this case requires that the judgment of the trial court be affirmed.

The facts distinguish this case from any of the authorities relied on by the appellant. The opinion will not be lengthened by a discussion of the same. Propositions 1 and 2 are overruled and the third becomes immaterial.

The judgment of the trial court is affirmed.