**BENZEL et ux. v. COMMERCIAL NAT. BANK OF SHERMAN. (No. 2840.)**

Court of Civil Appeals of Texas. Amarillo. Oct. 19, 1927.

Rehearing Denied Nov. 9, 1927. Application for Writ of Error Dismissed Dec. 14, 1927.

1. **Homestead ⬅57½—Principal purpose and use of alleged homestead tract held for jury in suit to foreclose lien of trust deed.**

In suit to foreclose lien of trust deed, securing note of husband and wife, on tract claimed as part of homestead, evidence *held* sufficient to take to jury question as to principal purpose and use to which such tract was put by them.

2. **Homestead ⬅70—City lots, not occupied by residence or appurtenances, must be substantially and principally used by family for home purposes to be exempt as homestead.**

Town or city lots, not actually occupied by family residence or its appurtenances, must be substantially and principally used by family for home purposes, not mainly to produce an income, to protect them as homestead from sale under execution for payment of owner's debts.

3. **Homestead ⬅35—Homestead depends on principal use of property.**

It is the principal use to which property is subjected that must be looked to in determining its homestead character.

4. **Homestead ⬅70—Corn field, separated by street from owners' improved tracts and used principally to raise products for sale, held not part of homestead.**

Tract separated by street from owners' other tracts, on which dwelling, barns, etc., are located, and not improved except for cultivation of corn, but used principally to raise products for sale, *held* not exempt from execution as part of homestead.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Homestead ⚖══70—Owners' intent to use tract, separated from improved tracts, as part of homestead, held insufficient to make it such.**

Owners' intention to use tract, separated from tracts on which they had their residence and all improvements, as part of homestead at time of purchasing it, was not sufficient to impress it with homestead rights.

**6. Homestead ⚖══31—Intent to use tract as homestead is unimportant, unless accompanied by use sufficient to impress such character thereon.**

Parties' intention to use tract as part of homestead is unimportant, unless accompanied by use sufficient to impress homestead character thereon.

**7. Homestead ⚖══31—Bona fide intent, evidenced by unmistakable acts showing intent to carry out design, to dedicate property as homestead, is necessary.**

To establish homestead, there must be an existing bona fide intention, evidenced by unmistakable acts showing intent to carry out design, to dedicate property as homestead.

Appeal from District Court, Grayson County; T. E. Wilcox, Judge.

Suit by the Commercial National Bank of Sherman, Tex., against E. L. Benzel and wife. From a judgment foreclosing the lien of a trust deed on a certain tract, defendants appeal. Affirmed.

Webb & Webb, of Sherman, for appellants.

Freeman, McReynolds & Hay, of Sherman, for appellee.

JACKSON, J. This suit was instituted in the district court of Grayson county, Tex., by the Commercial National Bank of Sherman, Tex., plaintiff, against E. L. Benzel and wife, Lucy T. Benzel, defendants, on three promissory notes aggregating, on June 22, 1926, the sum of $7,914.59. One of the notes, dated March 17, 1925, was for the principal sum of $2,486, and was given in renewal and extension of a note for the same amount, dated March 31, 1921.

Plaintiff alleges that the defendants, on March 31, 1921, executed and delivered said note, together with a deed of trust lien on certain property fully described in its petition, to secure the payment thereof, and on March 17, 1925, in writing, renewed and extended said note and the deed of trust lien securing its payment.

Plaintiff asks for judgment against the defendant E. L. Benzel for its entire indebtedness and for a foreclosure of its deed of trust lien on the land described therein against each of the defendants.

The defendants answered by general demurrer and general denial, and pleaded that on the 30th day of March, 1921, and for many years prior thereto and at all times since they were legally married and living together as husband and wife, that prior to the date of the deed of trust which plaintiff seeks to foreclose, they purchased the land involved, which is situated directly in front of and facing the house inhabited by them and their children, and that said land is and at all times has been a part of their homestead, and that hence, said lien is void and unenforceable, and pray that judgment be entered canceling such lien.

The plaintiff, by supplemental petition, pleaded general demurrer, general denial, and alleged that the land upon which it asserts a lien was acquired by the defendants on September 25, 1916, from M. D. and C. T. Carlton, at which time they owned and occupied as their homestead certain other tracts or parcels of land situated in the city of Sherman, in Grayson county, Tex., description of which plaintiff gives; that said other tracts or parcels of land constituting the homestead of the defendants, exclusive of the improvements thereon, exceeded in value the sum of $5,000; that said tracts and parcels of land at the time of the execution of the deed of trust involved in this suit had never been abandoned and the land covered by the deed of trust never became any part of such homestead. Plaintiff pleads, in the alternative: That if the tract of land described in its deed of trust was, at any time, a part of the homestead, defendants knowingly and intentionally abandoned it as such at the time the deed of trust was executed, and that the deed of trust provided: "We do hereby covenant that the above-described premises (meaning hereby the real property acquired from the said Carltons) are not used, occupied or claimed by us as a homestead nor intended to be used, occupied or claimed by us as a homestead, but that our homestead is located at 1106 Lockhart Street, Sherman, Texas." That this declaration in the deed of trust, in connection with obtaining the money evidenced by the note, constituted an abandonment of any homestead claim or use. That at the time the note and deed of trust were executed and delivered, the plaintiff could have collected its indebtedness and would have done so but for the fact that E. L. Benzel represented that the property covered by said deed of trust was no part of the homestead, and that he and his wife would execute and deliver the deed of trust to secure said indebtedness upon the condition that the time of payment thereof be extended, which representations were made for the purpose of inducing plaintiff to accept the note and security and postpone its demands for payment of its debt. That it relied and acted upon said representations, accepted the note and lien, and refrained from taking steps to collect its debt because thereof. That the defendant Lucy T. Benzel acquiesced and joined in the execution of the deed of trust for the purpose of securing the extension of the payment of

⚖══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said indebtedness, and they are now estopped, by reason of the above facts, from asserting any homestead right in said property.

In response to special issues submitted by the court, the jury found in effect that the land claimed and occupied by the defendants as their homestead on September 25, 1916, was of the value of $4,250; that the Carlton tract was, on that date, of the value of $1,-500; that the Carlton tract at and prior to the time the deed of trust was executed and delivered was principally and mainly used for raising products for the purpose of sale.

On these findings, the court rendered judgment in favor of plaintiff against E. L. Benzel for the debt and in favor of plaintiff against both defendants for a foreclosure of the lien on the Carlton tract of land. The judgment for the debt is not questioned; but from the judgment foreclosing the lien the defendants prosecute this appeal.

[1] The appellants assign as error the action of the court in submitting to the jury as an issue, over there written objection, the principal purpose and use to which they put the tract of land covered by the lien, at and prior to the time of the execution and delivery of the note and deed of trust, because the undisputed evidence shows that said tract of land was used by the defendants at the time as a part of their homestead and the sale of produce raised thereon would not deprive the land of its homestead character.

The record shows that the appellants were married in 1903 and continued, at all times thereafter, to live together as husband and wife; that in 1911 they purchased an acre and a half of land, which we will designate as the first tract, on which was situated a house and into which they immediately moved with their family; that in 1915, they purchased an additional 3½ acres of land, which we will designate as the second tract, and which adjoined the first tract; that they lived in the house on the first tract until 1918, when it was destroyed by fire, after which they moved into a house on the second tract, where they still reside. On September 25, 1916, they purchased what we will designate as the Carlton tract, which was 150 by 400 feet and is the land in controversy, and is separated from the other two tracts by what is called Lockhart street. •

Mr. Benzel testified, in substance, that at the time he bought the second tract he already had enough land on which to raise garden truck for the consumption of the family; that he bought the second tract for the purpose of enlarging the first tract so he could go into the poultry business; that they had to have more land to pay a boy to work around the house and help make a living on that piece of ground; that after the second tract was purchased, a boy was employed to assist in growing vegetables, fruit, and raising poultry to make a living; that there was about five

acres of land in the first and second tracts, both of which are west of Lockhart street; that the Carlton tract is east of said street; that prior to September 25, 1916, they had been renting the Carlton tract and using it for growing produce and had so used it ever since; that it had been planted in corn each year; that his place of business was never located on the Carlton tract, and that they rented it from the owner before they bought it to add more land for their commercial fruit, truck and poultry business; that they were operating such business and continued to do so; that their produce is sold direct to the retail grocers; that A. J. Lawrence comes out to the place and gets the produce in his truck and takes practically all of it; that his wife looks after that part of the business to help him make a living for the family.

Mrs. Benzel testified, in effect, that she runs a commercial fruit, truck and poultry business and her husband has nothing to do with it, but has employment and works in town; that they decided to buy the second tract in 1915 because they believed that, independent of Mr. Benzel's business, the land would probably make enough money to pay the living expenses of the family, and they could save and accumulate the money he made in his business; that they used the Carlton tract before they purchased it for growing corn and still use it for such purpose; that they bought the Carlton tract to make money to help pay the living expenses; that she operates a poultry farm and a truck farm, and commercial orchard; that she considers herself a commercial fruit grower, truck grower, and poultry woman; that she raises truck, fruit, poultry, and eggs, and the proceeds derived therefrom are used in support of the family, which consisted of herself, her husband and three daughters; that from the truck farm, poultry farm and commercial orchard, some years they make enough to pay household expenses and some years they did not; that she began selling a little produce to Lawrence and others when they bought the second tract in 1915; that she sold corn, eggs, and other produce to Mr. Lawrence and traded it for groceries; that the proceeds derived from all of the produce raised on all of the tracts is used to support, maintain and keep up the household; that in speaking of living expenses, in connection with the produce, she takes into consideration clothes for the children, groceries and those things; that her husband pays for the fuel, light and water, outside of which she undertakes to make the money for the support of the family from the acreage.

The testimony shows that all of the improvements, consisting of the residence, the barns, lots, chicken yard, orchard, etc., are located on the first and the second tracts; that the Carlton tract is unfenced and unimproved, except that it is cultivated in corn; that the Carlton tract is separated from the

first and second tracts by what is called Lockhart street; that the three tracts of land contain approximately 6½ acres, all of which is situated within the corporate limits of the city of Sherman.

The deed of trust executed by the appellants to the appellee contains the statement that the Carlton tract was not a part of the homestead, had never been used, claimed or occupied as such, and that appellants had no intention of so using it. It is not questioned that the debt is valid, due, and unpaid.

[2, 3] This statement from the record is, in our opinion, sufficient to show that the testimony presents an issue of fact to be submitted to the jury for its determination as to the principal purpose and use to which the Carlton tract of land was put by the appellants.

"One of the purposes of a rural homestead is to support the family therefrom. Such is not ordinarily the purpose of a city residence occupied as a home." Autry et al. v. Reasor et al., 102 Tex. 123, 108 S. W. 1162, 113 S. W. 748.

"To protect lots in a town or city, not actually occupied by the family residence or its appurtenances, they must be substantially used by the family for home purposes. When they are detached by inclosures from the homestead lot proper, and are improved for the purpose of being leased to tenants, and of thereby producing an income, it is evident they are no longer used as adjuncts of the family residence, and should be no longer exempt from forced sale. The mere fact that portions of the land may be occasionally used for a family purpose, such as to grow vegetables, to shelter livestock, or to furnish water, is not enough to shield it from sale under execution for the payment of the owner's debts. The principal use to which they are subjected must be looked to; and where, as evidently appears in this case, the main purpose to which the property is to be devoted is to bring in an income, and the family use is not only secondary and subordinate, but of trivial importance, the property should be no longer deemed a part of the homestead." Blum v. Rogers, 78 Tex. 534, 15 S. W. 117.

"It is the principal use that property is subjected to that must be looked to in determining the homestead character. Blackburn v. Knight, 81 Tex. 326, 16 S. W. 1075; Blackwell v. Lasseter (Tex. Civ. App.) 203 S. W. 619; Blum v. Rogers, 78 Tex. 530, 15 S. W. 115; Davis v. Taylor (Tex. Civ. App.) 33 S. W. 543; Duncan v. Alexander, 83 Tex. 441, 18 S. W. 817; Goodrich Rubber Co. v. Valley Plumbing Co. (Tex. Civ. App.) 267 S. W. 1036; Lasseter v. Blackwell (Tex. Com. App.) 227 S. W. 944; Lipscomb v. Adamson Lumber Co. (Tex. Civ. App.) 217 S. W. 228; Medlenka v. Downing, 59 Tex. 32; Wurzbach v. Menger, 27 Tex. Civ. App. 290, 65 S. W. 679; Wynne v. Hudson, 66 Tex. 1, 17 S. W. 110; Hudgins v. Thompson, 109 Tex.

433, 211 S. W. 586." Walker et al. v. Dailey et al. (Tex. Civ. App.) 290 S. W. 815.

[4] In view of the fact that the testimony discloses, without controversy, that the improvements, dwelling, barns, lots, chicken yard, orchard, garden, etc., were located on the first and second tracts, that the Carlton tract was separated from the first and second tracts by a street and was not improved in any way except the cultivation of the soil in corn, together with the finding of the jury, which is amply supported by the testimony, that the tract of land in controversy, at and prior to the time the deed of trust was executed, was used mainly and principally for raising products for sale, the foregoing authorities are conclusive against appellants' contention.

[5] The appellants assail as error the action of the trial court in refusing to submit to the jury, at their request, their special issue as to whether, at the time the defendants purchased the Carlton tract, they intended to use the same as a part of their homestead.

[6] It will be observed from the record that the appellants owned the first and second tracts of land, upon which they had their residence and all improvements and which was impressed with the homestead character, at the time they purchased the Carlton tract. Under these circumstances, the intention alone is not sufficient to impress the Carlton tract of land with homestead rights. "The intent of the parties is unimportant, unless accompanied by a use sufficient to impress the homestead character upon the property." Blackwell et al. v. Lasseter et al. (Tex. Civ. App.) 203 S. W. 621, and authorities cited.

[7] The jury having determined that the main and principal use made of the Carlton tract by appellants at and prior to the execution of the lien was to raise products for sale is equivalent to a finding that no act or acts had been done by appellants prior to the execution of the lien to manifest any intention of making the Carlton tract a part of their homestead, and hence any intention that they may have had relative to the use of the land, at the time of its purchase, is unimportant. Hamilton et al. v. Prescott (Tex. Sup.) 11 S. W. 549. "There must be an existing bona fide intention to dedicate the property as a homestead, and this must be evidenced by some unmistakable acts showing an intention to carry out the design." Markum v. Markum (Tex. Civ. App.) 210 S. W. 835.

Finding no error, the judgment is affirmed.